[No. F034698. Fifth Dist. Aug. 29, 2000.]

In re DESIREE F., a Person Coming Under the Juvenile Court Law.
KINGS COUNTY HUMAN SERVICES AGENCY, Plaintiff and
Respondent, v.
DANIEL F. et al., Defendants;
PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS, Movant
and Appellant.

462

---

## COUNSEL

Carol E. Helding and Neil A. Helding for Movant and Appellant.

Denis A. Eymil, County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

Patricia M. Belter for Minor.

---

## OPINION

**THAXTER, J.**—Picayune Rancheria of the Chukchansi Indians (the Tribe) appeals from an order denying its motion to intervene in a child dependency proceeding relating to Desiree F. and to invalidate those actions taken in alleged violation of the Indian Child Welfare Act of 1978 (ICWA or the Act). (25 U.S.C. § 1901 et seq.) Respondent Kings County Human Services Agency (Agency) contends that (1) the motion to intervene was untimely, and (2) substantial evidence supports a finding that Desiree was not an Indian child within the meaning of the Act.

We will conclude that the trial court erred when it denied the motion to intervene and will reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

Desiree was born in August 1997 and tested positive for cocaine and opiates. On August 14, 1997, a petition under Welfare and Institutions Code section 300[1] was filed in Fresno County alleging that Desiree should be declared a dependent of the court. The first page of the dependency petition noted that Desiree may fall within the provisions of the ICWA. The Fresno County Department of Social Services detention report indicated the minor's mother, Patricia H., is Chukchansi Indian.

The record reflects that only the mother and alleged father, Daniel F., were notified of the detention and dispositional hearings; there is no

---

[1]Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

indication in the record that the Tribe was notified as required by the Act.[2] Desiree's grandmother, Louise A., was in contact with the social worker and requested the minor be placed with her. Mrs. A. is a member of a recognized Indian tribe, although not the Chukchansi Tribe.

Desiree was ordered placed in foster care as of August 18, 1997. After that date, with the exception of one hearing in October 1997, the mother did not attend further hearings held in Fresno County.

An assessment of the mother prepared in September 1997 notes she is an "Indian/Alaskan female." A document prepared by the Fresno County case-worker in November 1997 contains a statement that the mother is not an Indian because the "Chukchansi deny she is a member of the tribe." This document also states that the determination that the mother was not a member of an Indian tribe was based on a "letter sent by Kings County July 22, 1996." The letter was not attached to the document.

The combined jurisdictional/dispositional hearing was held on December 18, 1997, in Fresno County. The court declared the minor a dependent and ordered reunification for the father. The whereabouts of the mother were unknown at this time and no reunification services were ordered for the mother. The Fresno County court did not make any finding as to the applicability of the ICWA. At this hearing, the court also relieved counsel for the mother and ordered the case transferred to Kings County.

Kings County accepted the transfer of the minor's dependency case on March 11, 1998. The Kings County court found that reasonable services had not been provided or offered to the father and ordered continued reunification services for him. The record reflects that no efforts were made by Kings County to notify the Tribe of the pending proceedings regarding Desiree. At the March 11 hearing, the Kings County court set a hearing for September 9, 1998, and denominated it as a six-month review hearing. The mother was not present at this or subsequent hearings, and the Kings County court did

[2]The ICWA provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided*, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding." (25 U.S.C. § 1912(a).)

not appoint counsel for her, although the ICWA states the court must appoint counsel for indigent parents of an Indian child. (25 U.S.C. § 1912(b).)

On August 11, 1998, Desiree was moved to a foster home in Kings County. This was apparently Desiree's third foster home since being removed from her mother.

Desiree's father was present at the September 9, 1998, review hearing. A further hearing was scheduled for March 9, 1999, and denominated as a 12-month review hearing. At the March 9 hearing, the father requested a contested evidentiary hearing be set. The parties reached a resolution on April 13, 1999, and a status review hearing was scheduled for the following week.

At the status review hearing on April 21, 1999, counsel for the Agency indicated the father had tested positive for methamphetamine. The Kings County court terminated reunification services and set a section 366.26 hearing for August 18, 1999.

Desiree's father was served with notice of the section 366.26 hearing; the mother was served by way of substituted service on Mrs. A. The Tribe was not notified of the section 366.26 hearing. The notice of the hearing set forth the recommendation that parental rights be terminated and Desiree be placed for adoption. No testimony was presented at the hearing, as the Agency submitted on the basis of the social worker's report. The ICWA however, provides that parental rights may only be terminated if evidence beyond a reasonable doubt, *including the testimony of expert witnesses*, established that continued custody of the Indian child by the parent would result in serious emotional or physical damage to the child. (25 U.S.C. § 1912(f).) At the conclusion of the section 366.26 hearing, the court scheduled a permanent plan hearing for February 16, 2000.

On August 17, 1999, Desiree's foster family wrote the juvenile court, expressing an interest in providing a permanent home for Desiree.

On October 18, 1999, after the section 366.26 order terminating parental rights but prior to the scheduled permanent plan hearing, the Tribe filed its "NOTICE [OF] TRIBAL INTERVENTION PURSUANT TO 25 U.S.C. § 1911(c)." The pleadings were signed by Christina Olin, a representative of the Tribe. The Tribe's moving papers asserted that Desiree was eligible to be enrolled as a member of the Tribe; the Tribe had not been notified of the dependency proceedings regarding Desiree; the ICWA had not been complied with as regards the Tribe's rights or the mother's rights; and the Tribe sought to

intervene and place Desiree with her grandmother, Mrs. A. Included with the moving papers was a copy of the tribal resolution signed by the tribal council, which authorized Ms. Olin to act on behalf of the Tribe with respect to ICWA matters. The Tribe asserted it was entitled as a matter of law to intervene in the proceedings and that all prior acts of the court had to be set aside as in violation of the ICWA.

The motion to intervene was set for hearing on November 22, 1999. Prior to that date, the tribal chairman wrote a letter to the juvenile court stating that Desiree was eligible for enrollment in the Tribe. The foster family again wrote the court indicating Desiree had been in their care for a year. The foster family expressed concern over the desire of the minor's biological family to adopt Desiree.

The Agency filed untimely opposition to the motion on November 22, 1999. Attached to the opposition was the July 22, 1996, letter from the former tribal chairman. That letter stated in part that Patricia H. "*is not* a blood relative of the Chukchansi Tribe" and therefore "cannot be enrolled." The letter concluded with the statement that "[i]t is no longer necessary to notify or involve our Tribal Office on court matters concerning children of Patricia [H]." The hearing on the motion to intervene was continued to December 22, 1999.

On December 16, 1999, the Tribe filed a supplemental motion to intervene. Attached to the supplemental motion was a letter from the current tribal chairman indicating that Desiree had been enrolled as a member of the Tribe as of December 6, 1999. The supplemental pleadings also noted that the minor's aunt and uncle, as well as her maternal great-great-grandfather (erroneously referred to in the pleading as the maternal grandfather) were enrolled members of the Tribe; the maternal grandmother is enrolled in another federally recognized tribe. The supplemental pleadings also stated there was an enrollment application pending for Patricia H.

As for the letter dated July 22, 1996, in the supplemental pleadings the Tribe asserted several grounds for objecting to the Agency's or the juvenile court's relying on that letter: (1) the letter predates the minor's birth and does not specify whether Desiree is eligible to be a member of the Tribe; (2) the letter was not accompanied by any resolution of the tribal council authorizing the then tribal chairman to act on behalf of the Tribe in ICWA matters; and (3) even if the Agency could rely on the 1996 letter, it had now been established that Desiree was an enrolled member of the Tribe, and the ICWA allowed intervention at any time in the proceedings.

At the start of the December 22, 1999, hearing on the motion, the parties stipulated that as of December 6, 1999, Desiree was an enrolled member of

the Tribe. The Tribe's enrollment specialist, Susann Contreras, testified regarding the tribal enrollment of Desiree's great-great-grandfather, great-grandmother, aunt, and uncle. The tribal specialist also testified that tribal membership was not based on "blood quantum," tribal membership was determined by the tribal council, and only the council or those specifically authorized by the council was authorized to give out information regarding tribal enrollment.

Christina Olin next testified that she first became aware of Desiree's existence on August 31, 1999. Olin further testified that Desiree's grandfather was an enrolled member of the Tribe.

At the conclusion of Olin's testimony, the Tribe rested, the Agency declined to present any witnesses or offer any evidence, and the court heard argument from the respective counsel. When the Agency argued that both the Agency and the juvenile court could rely on the July 22, 1996, letter, counsel for the Tribe objected on the grounds the letter was not in evidence. The court overruled the Tribe's objection after noting that the letter was attached to a pleading in the file and the court had read the letter.

The court stated that because neither Patricia H. nor Desiree was enrolled as members of the Tribe at the time of termination of parental rights, the termination order was valid. The court also articulated its understanding that no orders entered prior to the filing of the motion to intervene could be set aside. As for allowing intervention after termination of rights, the juvenile court stated that "if the mother's rights are . . . terminated or any of the other lineal relatives, that that would sever that branch." Counsel for the Agency argued that federal law did not preempt state law with respect to Indian children and contended that state law provided that once parental rights were terminated, a child's linkage to the Tribe was also terminated.

Ultimately, the juvenile court denied the motion to intervene. The Tribe filed a timely notice of appeal on December 30, 1999.

On February 14, 2000, the Tribe filed a petition for writ of supersedeas and temporary stay with this court. Thereafter, on February 25, 2000, the parties stipulated that the Kings County court continue to conduct six-month review hearings and to make appropriate orders for Desiree's maintenance, care, and custody, provided, however, no orders finalizing any adoption proceedings could be entered. On February 28, 2000, this court entered an order in conformance with the terms of the stipulation of the parties.

DISCUSSION

1. *"Indian Child"*

■ The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes and families. Minimum federal standards, both substantive and procedural, effectuating these policies are set forth in the ICWA. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421 [285 Cal.Rptr. 507].) To these ends, if an Indian child resides or is domiciled within an Indian reservation, the tribe shall have exclusive jurisdiction over any child custody proceeding. (25 U.S.C. § 1911(a).) If the child does not reside upon or is not domiciled within a reservation, the state court shall transfer jurisdiction of the proceeding to the tribe unless either parent objects. (*Id.*, § 1911(b).)

The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource. (*In re Crystal K.* (1990) 226 Cal.App.3d 655, 661 [276 Cal.Rptr. 619].) Congress has concluded the state courts have not protected these interests and drafted a statutory scheme intended to afford needed protection. (25 U.S.C. § 1902.) The courts of this state must yield to governing federal law.

■ To ensure a tribe's right to intervene, the ICWA requires "where the court knows or has reason to know that an Indian child is involved," the party seeking termination of parental rights must, in relevant part, notify the Indian child's tribe of the pending proceedings and its right to intervene. (25 U.S.C. § 1912(a); see also *Adoption of Lindsay C.* (1991) 229 Cal.App.3d 404, 408 [280 Cal.Rptr. 194].) Indeed, if the identity or location of the tribe cannot be determined, the notice shall be given to the Secretary of the Interior (Secretary). (25 U.S.C. § 1912(a).) The burden of identifying and providing notice to the proper tribe then shifts to the Secretary who presumably has more resources and skill with which to ferret out the necessary information. (*In re Kahlen W., supra,* 233 Cal.App.3d at p. 1422.) Once the Secretary receives the statutory notice, the Secretary has 15 days within which to provide notice to the tribe or notify the court that it needs additional time to do so. (*Id.* at p. 1423.)

This court has characterized notice as a "key component of the congressional goal to protect and preserve Indian tribes and Indian families." (*In re Kahlen W., supra,* 233 Cal.App.3d at p. 1421.) We also have observed: "the statute and all cases applying the Act unequivocally require *actual notice* to the tribe [or the Secretary]" of both the proceedings and of the right to

intervene. (*Id.* at p. 1422.) The requisite notice to the tribe serves a twofold purpose: (1) it enables the tribe to investigate and determine whether the minor is an Indian child; and (2) it advises the tribe of the pending proceedings and its right to intervene or assume tribal jurisdiction. (*In re Pedro N.* (1995) 35 Cal.App.4th 183, 186-187 [41 Cal.Rptr.2d 819].)

■ As we noted in *In re Pedro N.*, one of the primary purposes of giving notice to the tribe is to enable the tribe to determine whether the child involved in the proceedings is an Indian child. (*In re Pedro N., supra*, 35 Cal.App.4th at p. 186.) The record is clear that once the Tribe was made aware of Desiree's existence and received notice of the pending proceedings involving Desiree, it determined she was a member of the Tribe and enrolled her as a member. Respondent maintains the ICWA could not apply to any proceedings prior to December 6, 1999, the date on which Desiree became an enrolled member of the Tribe. This argument is without merit. The reason Desiree was not formally enrolled as a member of the Tribe at an earlier stage of the proceedings is solely the fault of respondent and its predecessor agency in Fresno County. Had the Tribe been notified of the proceedings and Desiree's existence at the inception of the case, as federal law and the California Rules of Court,[3] rule 1439 require, the Tribe would have had the opportunity to formally enroll Desiree as a member at the inception of the case. We will not permit Desiree to be deprived of her tribal heritage when enrollment prior to December 6, 1999, was precluded because of the conduct of respondent and respondent's predecessor agency.

Additionally, the July 22, 1996, letter from the former tribal chairman stating Desiree's half siblings were not members of the Tribe could not reasonably be relied upon as determinative of Desiree's status. A determination of tribal membership is made on an individual basis, and blood quantum is not determinative. The Tribe's decision that a child is or is not a member, or eligible to be a member, is determinative. (Rule 1439(g)(1).) The juvenile court and the county welfare department have an affirmative duty to inquire whether the child subject to the dependency petition *is or may be* an Indian child. (Rule 1439(d).) It follows, therefore, that relying upon a letter predating the birth of the child subject to the dependency petition does not satisfy the affirmative duty to inquire regarding the particular child before the court.

Further, the juvenile court's position that Desiree had to be enrolled as a member of the Tribe to qualify for ICWA protections, or to invoke the notice provisions of the ICWA, is without merit. Enrollment is not required in order to be considered a member of a tribe; many tribes do not have written rolls.

---

[3]References to rules are to the California Rules of Court unless otherwise specified.

(Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, 67586 (Nov. 26, 1979) (Guidelines).) While enrollment can be one means of establishing membership, it is not the only means, nor is it determinative. (*United States v. Broncheau* (9th Cir. 1979) 597 F.2d 1260, 1263.) Testimony established that Desiree was eligible for membership in the Tribe at the time the dependency proceedings were initiated. The ICWA applies regardless of whether the child is registered, or enrolled, with the tribe. (*Matter of Ashley Elizabeth R.* (1993) 116 N.M. 416, 420-421 [863 P.2d 451, 455-456].) Recently enacted Welfare and Institutions Code section 360.6 codifies the state Legislature's intent that the ICWA applies to children who are *eligible* for membership in an Indian tribe, even if not enrolled. California Rules of Court, rule 1439(g)(2) also specifically provides that "[i]nformation that the child is not enrolled in the tribe is not determinative of status as an Indian child."

The Indian status of the child need not be certain to invoke the notice requirement. (*In re Kahlen W., supra*, 233 Cal.App.3d at p. 1422.) Because the question of membership rests with each Indian tribe, when the juvenile court knows or has reason to believe the child may be an Indian child, notice must be given to the particular tribe in question or the Secretary. (25 U.S.C. § 1912(a); *In re Kahlen W., supra*, at pp. 1421-1422; *In re Junious M.* (1983) 144 Cal.App.3d 786, 793 [193 Cal.Rptr. 40].) The dependency petition filed on behalf of Desiree noted that the ICWA possibly applied. Therefore, it was actually the duty of the Fresno County Department of Social Services to notify the Tribe or the Secretary of the filing of the petition by registered mail, return receipt requested. (25 U.S.C. § 1912(a).)

In accordance with the ICWA (25 U.S.C. § 1912(a)), all proceedings should have been suspended until a minimum of 10 days after the Tribe received the notice. This the court did not do. The Fresno County agency having failed to provide the required notice, it was incumbent upon Kings County to suspend proceedings while the agency in that county provided the Tribe with notice. The record reflects that the requisite notice was not sent to the Tribe even after the case was transferred to Kings County.

The tribe of an Indian child who is the subject of child custody proceedings may petition any court of competent jurisdiction to invalidate the action upon a showing of a violation of title 25 United States Code section 1912. (25 U.S.C. § 1914.) There is nothing either in the ICWA or the case law interpreting it which enables anyone to waive the tribe's right to notice and right to intervene in child custody matters. (25 U.S.C. § 1912(a); *In re Kahlen W., supra*, 233 Cal.App.3d at p. 1422.) Given the absence of notice, both the Fresno County and Kings County courts erroneously proceeded to determine jurisdiction, terminate parental rights, effectuate a foster care

placement, and institute adoption proceedings. (*In re Kahlen W., supra,* at p. 1424.) The failure to provide the necessary notice requires this court to invalidate actions taken in violation of the ICWA and remand the case unless the tribe has participated in or expressly indicated no interest in the proceedings. (*Ibid.*) Unless one of these exceptions applies, the failure to comply with title 25 United States Code section 1912(a) constitutes prejudicial error. (*In re Kahlen W., supra,* at p. 1422.)

■ To the extent the juvenile court, or respondent, relied on the July 22, 1996, letter as an express indication that the Tribe had no interest in the proceedings, such reliance was error. The letter was signed by the Tribe's former chairman, but was not accompanied by any resolution of the tribal council authorizing the chairman to act on behalf of the council with respect to ICWA matters. As the testimony at the hearing on the motion to intervene made abundantly clear, only the tribal council may determine tribal membership, not the tribal chairman. Further, under tribal rules, no one may act on behalf of the Tribe with respect to ICWA matters unless authorized to do so by the tribal council. Respondent neither called any witnesses nor adduced any testimony on cross-examination of appellant's witnesses that would indicate the July 22, 1996, letter was authorized by the tribal council. In the absence of evidence that the former tribal chief was authorized to unilaterally act on behalf of the tribal council, the letter simply has no evidentiary value whatsoever. (*Matter of J.M.* (Alaska 1986) 718 P.2d 150, 154-155.) Furthermore, we agree with the Tribe that the juvenile court erred in considering the letter over the Tribe's objection when the letter was not admitted into evidence.

2. *Timeliness of Motion to Intervene*

■ Respondent asserts that the Tribe's motion to intervene was not timely in that it was filed after parental rights were terminated and a permanency planning hearing was ordered. As such, respondent contends that the ICWA precludes intervention at this stage of the proceedings. (25 U.S.C. § 1911(c).) The Tribe contends it has a statutory right to intervene at any time in the proceedings. The Tribe is correct.

The ICWA states: "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene *at any point in the proceeding.*" (25 U.S.C. § 1911(c), italics added.) Respondent contends Desiree was in "preadoptive placement" at the time the motion to intervene was filed and that preadoptive placement is not a point at which a tribe can intervene.

This court, in *In re Alicia S.* (1998) 65 Cal.App.4th 79, 83 [76 Cal.Rptr.2d 121], concluded that the provisions of title 25 United State Code sections 1911 and 1912 applied to all "child custody proceedings" involving an Indian child. A child custody proceeding is defined to include any proceeding involving foster care placement, termination of parental rights, preadoptive placement, or adoption proceedings. (25 U.S.C. § 1903(1).) California Rules of Court, rule 1439(b) provides that title 25 United States Code sections 1911 and 1912, in the ICWA apply to "all proceedings under section 300 et seq., including detention hearings, jurisdiction hearings, disposition hearings, reviews, hearings under section 366.26, and subsequent hearings affecting the status of the Indian child."

The ICWA permits a tribe to intervene at any point in state court child custody proceedings. (*In re Alicia S., supra,* 65 Cal.App.4th at p. 82; *Matter of Adoption of Riffle* (1995) 273 Mont. 237, 241 [902 P.2d 542, 545].) The factual setting in *Riffle* is substantially similar to that of the instant case. In *Riffle,* the tribe sought to intervene after parental rights were terminated and while the minor was up for adoption. The court held that the intervention was timely within the language of the ICWA (25 U.S.C. § 1911(c)). (*Matter of Adoption of Riffle, supra,* at p. 241; accord, *Matter of Guardianship of Q.G.M.* (Okla. 1991) 808 P.2d 684, 688-689.)

In arguing that the motion to intervene was untimely, respondent has failed to distinguish between a motion to intervene and a motion to transfer the child custody proceedings to a tribal court. In *In re Robert T.* (1988) 200 Cal.App.3d 657, 664 [246 Cal.Rptr. 168], the tribe was notified of the commencement of dependency proceedings yet delayed for five months before moving to transfer jurisdiction to a tribal court. Under the circumstances, the delay in seeking to transfer jurisdiction to the tribal court was held to be untimely. In *Matter of J.B.* (Okla.Ct.App. 1995) 900 P.2d 1014, the tribe wanted to transfer the proceedings to a tribal court nearly two years after the tribe had received notification of the pendency of the proceedings. The court held that the request to transfer the action to a tribal court was untimely. (*Id.* at pp. 1015-1016.) One case cited by respondent, *Matter of J.R.S.* (Alaska 1984) 690 P.2d 10, did conclude that the right of a tribe to intervene was limited. (*Id.* at pp. 15-16.) We decline to follow this case, however, as it is contrary to our holding in *In re Alicia S.*

*Matter of Adoption of Crews* (1992) 118 Wash.2d 561 [825 P.2d 305], cited by respondent, involved a voluntary relinquishment and application of the existing Indian family doctrine. This court criticized *Crews* and specifically rejected the Indian family doctrine in *Alicia S.* (*In re Alicia S., supra,* 65 Cal.App.4th at p. 84, fn. 3.) As for *People of Dept. of Soc. Serv. in Interest of A.E.V.* (Colo.Ct.App. 1989) 782 P.2d 858 (*A.E.V.*), the tribe was properly

notified of the dependency proceedings and intervened. The tribe then withdrew, claiming the minor was not a member. When the tribe again sought to intervene after parental rights were terminated, claiming the child was now a tribal member, the motion to intervene was denied. (*Id.* at p. 860.) *A.E.V.* is inapposite because here the Chukchansi were never properly notified of the dependency proceedings involving Desiree and never notified the court that Desiree was not a member of the tribe.

The Guidelines also do not support respondent's position. ■ Although the Guidelines do not have a binding effect on this court, the construction of a statute by the executive department charged with its administration is entitled to great weight. (*In re Krystle D.* (1994) 30 Cal.App.4th 1778, 1801, fn. 7 [37 Cal.Rptr.2d 132].) ■ The Guidelines state that while the ICWA does not explicitly require transfer petitions to be timely (25 U.S.C. § 1911(b)), it does authorize a court to refuse to transfer a case for good cause. Good cause exists to deny a transfer request when a party has delayed in seeking such a transfer *after* being notified of the proceedings. The Guidelines also note that there are no restrictions on a tribe's right to intervene, and that intervention is permitted at any point in the proceedings. (Guidelines, *supra*, at p. 67590.)

As for respondent's assertion that Code of Civil Procedure section 387, subdivision (a) precludes the Tribe from intervening, it does not. First, respondent has provided us with no authority, and we are aware of none, which would permit a state procedural statute to preempt the substantive provisions of the federal ICWA. Second, although a trial court has discretion to deny a potential party's motion to intervene under Code of Civil Procedure section 387, subdivision (a) if there has been an unreasonable delay (*Northern Cal. Psychiatric Society v. City of Berkeley* (1986) 178 Cal.App.3d 90, 109 [223 Cal.Rptr. 609]), no such unreasonable delay exists in the instant case.

The Tribe did not delay in seeking to intervene. Although respondent maintains that the Fresno County agency determined as of November 1997 that Desiree was not a member of the Tribe, respondent fails to note that in making this determination, Fresno County either relied on the July 1996 letter forwarded from Kings County, or engaged in some other form of contact with the Tribe which does not satisfy the mandatory notice requirements. The ICWA mandates the method by which notice must be given (25 U.S.C. § 1912(a)), as does rule 1439(f)(1); state courts have no jurisdiction to proceed with dependency proceedings involving a possible Indian child until a period of at least 10 days after the *receipt* of such notice. The notice requirement is not satisfied unless there is strict adherence to the federal

statute; speaking with various members of the tribe in an attempt to determine the minor's status does not satisfy the notice requirement. (*In re Kahlen W., supra,* 233 Cal.App.3d at pp. 1418, 1420, 1424, 1427; *In re Levi U.* (2000) 78 Cal.App.4th 191, 197 [92 Cal.Rptr.2d 648].)

That the Tribe was never properly notified of the proceedings is particularly egregious in light of the fact that compliance requires no more than the completion of a preprinted form promulgated by the State of California, Health and Welfare Agency, for the benefit of county welfare agencies. The record is devoid of any evidence that the Tribe ever received notice, by registered mail, return receipt requested, of any of the proceedings regarding Desiree; failure of the juvenile court to secure compliance with the notice provisions is prejudicial error. (*In re Kahlen W., supra,* 233 Cal.App.3d at p. 1424; *In re Levi U., supra,* 78 Cal.App.4th at p. 197.)

To the extent the juvenile court determined that Desiree's status as an Indian child was severed when parental rights were terminated, such a position is wholly without merit. Rule 1439(k) specifically notes that in preadoptive settings, after parental rights are terminated, the placement preferences set forth in the ICWA are to be followed (25 U.S.C. § 1915). The ICWA provides that when an adoptive Indian child reaches the age of 18, the court which entered the final decree of adoption must inform the Indian child of his or her tribal affiliation, biological parents, and any other information as may be necessary to protect and preserve any rights flowing from tribal membership (25 U.S.C. § 1917). Rule 1439(p) is designed to help effectuate title 25 United States Code section 1917, and provides that after the adoption of an Indian child is finalized, a record of the adoption is to be filed with the Secretary.

### 3. *Extent to Which Prior Orders Are Invalidated and Proceedings After Remand*

The failure to give the Tribe notice as required by the ICWA requires that we invalidate those juvenile court orders to which the Tribe objects. At oral argument the Tribe stipulated that it had no objections to orders made prior to the dispositional hearing held on December 18, 1997, nor to the order transferring the case from Fresno County to Kings County. Thus, we will reverse and remand the matter to the Kings County Superior Court, leaving all orders prior to December 18, 1997, intact.

On remand, if the Tribe elects not to assume tribal jurisdiction over this minor, the juvenile court must comply with the provisions of the ICWA, Welfare and Institutions Code section 360.6, and rule 1439. Formal notice of the proceedings must be sent to *all* tribes in which the minor may be eligible

for membership. (Rule 1439(f)(3); Guidelines, *supra*, at p. 67587.) The Fresno County social worker's assessment of Desiree's mother noted that Patricia H. was Chukchansi and Alaskan native. Alaskan native tribes fall under the ICWA. (*Native Village of Venetie IRA v. State of Alaska* (9th Cir. 1998) 155 F.3d 1150, 1152.) Thus, formal notification will need to be sent to Patricia H.'s Alaskan tribe, the federally recognized tribe of which Desiree's grandmother, Louise A., is an enrolled member. Notice to one tribe, the Picayune Rancheria of the Chukchansi Indians, does not protect the rights of another interested Indian tribe. (See *Navajo Nation v. Superior Court of State of Wash.* (E.D.Wash. 1999) 47 F.Supp.2d 1233.) Once formal notification is given to the tribe(s), proceedings cannot commence until all applicable time periods have passed. (25 U.S.C. § 1912(a); Guidelines, *supra*, at p. 67589; rule 1439(h).)

Pursuant to section 360.6, subdivision (c), the provisions of the ICWA must be applied to Desiree. There has been no valid termination of parental rights in accordance with the ICWA: (1) notification to the tribe(s) was not given; (2) Kings County apparently failed to appoint counsel for the mother in accordance with the ICWA (25 U.S.C. § 1912(b)); no expert testimony was presented as required by the ICWA (25 U.S.C. § 1912(f)); and the juvenile court did not apply a standard of "beyond a reasonable doubt" in terminating parental rights. (25 U.S.C. § 1912.)

The emergency removal of Desiree from the custody of her mother was warranted under the ICWA. Absent extraordinary circumstances, temporary emergency custody shall not continue for more than 90 days. (Guidelines, *supra*, p. 67589.) Thus, once the juvenile court may properly proceed after remand, it must conduct a jurisdictional hearing in accordance with the ICWA. (25 U.S.C. § 1922; rule 1439(i) & (j).)

In determining any placement of Desiree, including emergency, foster care, or adoptive, the juvenile court is required to follow the placement preferences set forth in the ICWA. (25 U.S.C. §§ 1915, 1916; rule 1439(k).) In the absence of good cause to the contrary, the first priority is for placement with a member of the Indian child's extended family. In Desiree's case, both her maternal grandmother and maternal aunt expressed a desire to have Desiree placed with them. Factors flowing from Desiree's current placement in flagrant violation of the ICWA, including but not limited to bonding with her current foster family and the trauma which may occur in terminating that placement, shall not be considered in determining whether good cause exists to deviate from the placement preferences set forth in the ICWA. (25 U.S.C. §§ 1915, 1916; Guidelines, *supra*, at pp. 67594-67595; cf. *B.R.T. v. Executive Director of S.S. Bd. N. D.* (N.D. 1986) 391 N.W.2d 594, 601, fn. 10.)

Some of Desiree's cousins and siblings are in the custody of the grand-mother, Mrs. A., a member of a federally recognized tribe, and several members of Desiree's extended Indian family are enrolled members of the Chukchansi tribe. This is not a case of an Indian child being removed from a family having no connection whatsoever to the Indian community. These facts, plus Desiree's enrollment as a tribal member, as a matter of law constitute significant tribal affiliation warranting application of the place-ment preferences in the ICWA. (§ 360.6, subd. (c).) Under these circum-stances, it does not appear that there is good cause to depart from the placement preferences set forth in the ICWA. (See *In re Alicia S.*, *supra*, 65 Cal.App.4th at p. 91.) We cannot apply the law so as "automatically to 'reward those who obtain custody, whether lawfully or otherwise, and maintain it during any ensuing . . . litigation.' " (*Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 54 [109 S.Ct. 1597, 1611, 104 L.Ed.2d 29].)

4. *Conclusion*

Had the mandate of the ICWA been followed in 1997, when Desiree was first removed from the custody of her mother, much potential anguish might have been avoided. We are not unaware that nearly three years have passed since Desiree was first removed from the custody of her mother and placed in foster care, and that approximately two of those years have been spent in her current placement. A court deciding Desiree's fate today is not writing on a blank slate.

That we are required to reverse and invalidate prior orders of the Fresno County and Kings County courts is, unfortunately, the result of the failure of the respective county welfare agencies and juvenile courts to comply with the clear provisions of the ICWA and rule 1439. It is our hope that county welfare agencies in future cases will promptly give the statutory notice to Indian tribes whenever there is a possibility that a minor may be subject to the ICWA, juvenile courts will stay proceedings as required until at least 10 days after the notice is received by the tribe, and juvenile courts will promptly inquire and determine compliance with the ICWA.

DISPOSITION

The order of the Kings County juvenile court denying the Tribe's motion to intervene is reversed; all orders and actions taken by the Fresno County and Kings County courts subsequent to December 17, 1997, save and except

for the order transferring the matter from Fresno County to Kings County, are invalidated pursuant to 25 United States Code section 1914. The case is remanded for further proceedings consistent with this opinion, including a transfer of jurisdiction to the Tribe should it elect to assume jurisdiction.

Dibiaso, Acting P. J., and Harris, J., concurred.

A petition for a rehearing was denied September 19, 2000, and the opinion was modified to read as printed above.