Filed 2/25/13  In re S.J. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.J. et al., Persons Coming Under the Juvenile Court Law. | |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.C.,<br><br>    Defendant and Appellant. | 2d Juv. No. B242550<br>(Super. Ct. Nos. J1395309, J1395310, J1395311)<br>(Santa Barbara County) |

J.C. appeals a judgment of the juvenile court terminating her parental rights to her children, S.J., Jo.J. and Ja.J.  (Welf. & Inst. Code, §§ 300, 366.26.)  We conclude, among other things, that:  1) the Santa Barbara County Child Welfare Services (CWS) gave proper notice under the Indian Child Welfare Act (ICWA) (25 U.S.C., § 1901 et seq.) to the Jena Band of Choctaw Indians (JBCI), the Choctaw Nation of Oklahoma (CNO), the Mississippi Band of Choctaw Indians (MBCI), and the Bureau of Indian Affairs (BIA); and 2) the court's finding that ICWA does not apply is supported by the documentary evidence in the record and in the recently augmented record on appeal.  We affirm.

FACTS

On March 10, 2011, the police notified CWS that J.C. "had left her three children in the care of" a "heavily intoxicated" man. The children - S.J., seven years old; Jo. J., four years old; and Ja.J., eight months old - had no "clean clothing, food, or supervision." The intoxicated man did not know where J.C. was or how to contact her. The motel room where the children resided was "extremely unkempt" with "spoiled food on the floor, dressers, bathroom sink, and on top of the toilet." Vicodin and bottles of pain medication "were left within the reach of the children."

CWS determined that J.C.'s "Child Welfare history place[d] the children at risk [for] abuse and neglect." It removed the children from the home.

CWS filed a juvenile dependency petition (Welf. & Inst., § 300) alleging, among other things, that the children will suffer "serious physical harm" as a result of J.C.'s failure "to supervise or protect" them. On April 18, 2011, the juvenile court sustained the petition. On November 3, 2011, the court found CWS had provided appropriate reunification services, but J.C. did not comply with her requirements under the case plan. It terminated family reunification services. On June 4, 2012, the court terminated J.C.'s parental rights to the children.

*ICWA*

On a "parental notification of Indian status" form, J.C. stated that she had no Indian ancestry. M.J., the children's father, stated that he "may have Indian ancestry," but he did not know the name of the tribe. M.J. claimed D.G., his mother, would have the information. D.G. contacted CWS. She claimed the children's Indian ancestry originated from L.R., their great-great-great-great-grandmother, who was a Choctaw Indian born in 1841.

CWS sent notices of "child custody proceeding for Indian child" forms (Judicial Council form ICWA-030) to the three Choctaw tribes - the JBCI, the CNO and the MBCI. It also sent notice to the BIA.

These forms included a family tree attachment which listed the names, dates of birth and dates of death of 11 ancestors on the children's paternal grandmother's

2

side of the family. It listed family ancestors who may have been members of the Choctaw tribes. The family tree included a span of the various generations of ancestors born between 1803 and 1961. For four of the ancestors, the family tree included the cities and states where they resided at birth and death. This chart included L.R., the children's great-great-great-great-grandmother, and D.G., the children's paternal grandmother. For L.R., the chart listed both the city and state where she was born and the city and state where she resided at her death. It listed her tribal affiliation as "Choctaw." It listed D.G.'s date of birth and her tribal affiliation as "Choctaw."

Between April 5, 2011, and April 12, 2011, CWS received certified return mail receipts from the three tribes and the BIA acknowledging receipt of the ICWA notices.

In an October 17, 2011, "status review report," CWS stated that all three tribes had determined that the children were "not eligible for enrollment" in their respective tribes. It said the BIA determined that CWS "has provided appropriate notice to the tribes." CWS requested the court "to find that ICWA does not apply."

The juvenile court found CWS gave proper notice of "the proceeding[s] and the right . . . to intervene" to the tribes and the BIA. It found ICWA did not apply.

DISCUSSION

*ICWA Compliance*

J.C. contends the judgment of the juvenile court must be reversed because CWS did not comply with ICWA. We disagree.

Congress enacted ICWA with the intent that the best interests of Indian children are served by retaining their Indian tribal ties and cultural heritage. (*In re Desiree F*. (2000) 83 Cal.App.4th 460, 469.) "'The ICWA confers on tribes the right to intervene at any point in state court dependency proceedings.'" (*In re Karla C*. (2003) 113 Cal.App.4th 166, 174.) Proper notice to tribes is of critical importance, and courts strictly construe ICWA notice requirements. (*Ibid.*) "Under the ICWA, the tribe determines whether the child is an Indian child and its determination is conclusive." (*Ibid.*)

3

J.C. contends the record is incomplete because it does not contain the tribes' responses to CWS's ICWA notices. She notes that some courts have suggested the preferred procedure is for the trial court to receive the tribal letters on membership eligibility before making an ICWA finding. (*In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 906.) But here there was uncontradicted evidence that the tribes were properly notified as shown by their certified mail return receipts in the record. In addition, there was evidence to support the finding that the children were not eligible for tribal membership in the CWS's October 17th status review report. It describes the tribes' eligibility determinations and it was not contradicted.

CWS recently filed a motion to augment the record with copies of the letters from the three Choctaw tribes confirming that the children are not eligible for tribal membership. We grant that motion. (*In re C.D.* (2003) 110 Cal.App.4th 214, 226 [record may be augmented to show ICWA compliance while the appeal is pending].) In addition, on December 3, 2012, the juvenile court held a supplemental hearing on ICWA compliance. CWS filed a new ICWA status report, the tribal letters and an "ICWA Matrix" document showing the history of the ICWA correspondence. The court again found that ICWA did not apply.

J.C. contends CWS did not comply with its ICWA obligations because the family tree should have been more complete by expressly listing the relationship of each of the 11 ancestors to the children. But the family tree showed D.G.'s linear family history back to 1803. It showed the names of her parents, her grandparents, her great-grandparents, her great-great-grandparents and her great-great-great-grandparents. The chart provided the dates of birth of all relatives that were alleged to have Indian heritage. It provided known information about where they lived at birth, death and their tribe. This gave the tribes the opportunity to check these names with their records to verify membership. The juvenile court could reasonably find that nobody would be confused about the family relationships of all the ancestors when reading this chart.

J.C. claims CWS did not obtain the address of D.G who was the parental grandmother. She suggests that information had to be included in the ICWA notices sent

4

to the tribes. But the BIA determined that CWS provided sufficient information. J.C. did not introduce evidence to contradict that finding. Nor did she show how the missing address information would change the result. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1531 [deficiencies in ICWA notices do not require reversal if they would not have made a difference in the result].) D.G. claimed Indian ancestry from L.R. But the tribes determined that L.R. was not a tribal member. This disproved D.G.'s claim of Indian ancestry.

In addition, we must defer to the expertise of the tribes in determining membership. A tribe's determination is conclusive. (*In re Karla C.*, *supra*, 113 Cal.App.4th at p. 174.) They know the information they need to make eligibility determinations. If they needed additional information, we presume they would have asked for it. Or that they would have stated they lacked sufficient information to make a determination. Instead, they reviewed their records and unequivocally determined that the ancestors listed on the family tree were never enrolled tribal members and the children were not eligible for membership. The juvenile court's finding that ICWA does not apply is supported by the record.

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

5

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____


Jonathan B. Steiner, under appointment by the Court of Appeal, for Defendant and Appellant.


Dennis A. Marshall, County Counsel, Toni Lorien, Deputy, for Plaintiff and Respondent.