Filed 7/11/13  In re David H. CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re DAVID H., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENISE H.,<br><br>    Defendant and Appellant. | A136336<br><br>(Alameda County<br> Super. Ct. No. HJ11017632) |

Denise H. (mother) appeals from the order terminating her parental rights to her son, David H., under Welfare and Institutions Code section 366.26.[1]  Mother claims that the Alameda County Social Services Agency (the agency) failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA).  We conclude that any deficiency in the ICWA notice provided to the tribes was harmless error.  Accordingly, we affirm the order terminating mother's parental rights.

## BACKGROUND

David's brother, K.H., was injured and brought into protective custody on September 13, 2011.  He was removed from the care of mother and David H. (father).  The agency filed a petition pursuant to section 300, subdivision (a) on behalf of K.H., and

---

[1] All further unspecified code sections refer to the Welfare and Institutions Code.

1

the juvenile court sustained the petition and declared K.H. a dependent child of the court. The parents failed to reunify with K.H. and the court terminated services to the parents on September 1, 2011. Mother's parental rights to K.H. were terminated under section 366.26 on April 13, 2012.[2]

David was born after his brother had been removed from the parents' home. The parents failed to address the concerns leading to his sibling's removal and, in September 2011, the agency filed a petition pursuant to section 300, subdivisions (b) and (j) on behalf of David.

The juvenile court held a detention hearing on September 16, 2011. The parents submitted on the recommendation of detention, and the court ordered the continued detention of David. The court found that father was the presumed father of David. The court asked whether the parents believed that they had "any American Indian heritage." Mother responded that she did and reported Cherokee, Chippewa, and Blackfoot heritage. Father stated that he might have American Indian heritage. Counsel for the agency informed the court that there was a finding that the ICWA did not apply to David's brother and he had the same biological parents. Counsel for David told the court that it had to issue independent ICWA notices for each child. The court suggested that the parents complete the ICWA-029 forms.

Mother completed the ICWA-029 form and indicated that she might be a member of the Chippewa, Blackfoot, and Cherokee Tribes. Father also completed the form and stated that he might be a member or be eligible for membership of the Cherokee Tribe.

On September 30, 2011, the agency sent notices of David's dependency case to the Bureau of Indian Affairs (BIA), the Secretary of the Interior, the Blackfeet Tribe, the Bad River Band Lake Superior Tribe of Chippewa Indians, and the Cherokee Nation. The notices contained the correct information regarding David, mother, and father, but incorrectly listed mother's father as her grandfather. The notices also erroneously listed a

_____

[2] On October 23, 2012, in a nonpublished opinion, *In re K.H.,* A135809, we granted the agency's motion to dismiss K.H.'s untimely appeal.

2

person with mother's last name as father's paternal grandfather.  The notice did not provide information about the parents of mother and father.

The three notified tribes responded to the notice and reported that David was not enrolled, or eligible for enrollment, in their respective tribes.

On December 16, 2011, the agency sent out a second ICWA notice, which included correct information regarding mother, father, father's parents, mother's father, mother's grandmother, mother's grandfather, father's grandmother, and father's grandfather.  The agency sent this second notice to the BIA, the Secretary of the Interior, and the Bad River Band Lake Superior Tribe of Chippewa Indians.  The agency also sent the notice to all the federally recognized Chippewa Tribes, with the exception of the Lac du Flambeau Band of Lake Superior Chippewa Indians (Lac du Flambeau Tribe) and the St. Croix Tribe of Wisconsin.  It also sent notice to two of the three federally recognized Cherokee Tribes:  the Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee.  Additionally, it mailed an ICWA notice to various other tribes unaffiliated with the Chippewa, Blackfeet, or Cherokee Tribes.  It did not send a second notice to the Blackfeet Tribe.

The BIA and 13 of the 32 notified tribes responded.  They indicated that David was not enrolled or eligible for membership in their respective tribes.

On January 10, 2012, the agency mailed a third ICWA notice to the tribes that had not responded to the second notice, to the BIA, and to the Secretary of the Interior.  The family information in the third notice was the same as the information sent in the second notice.

The agency received responses from the Secretary of Interior, the BIA, and 13 more tribes.  They reported that David was not enrolled or eligible for membership in their respective tribes.  The BIA marked the following box:  "The notice received contains insufficient or limited information to determine Tribal Affiliation [citation].  When additional information becomes available, please forward the Notice to the appropriate Tribe(s)."

After the agency had sent the third ICWA notice, mother advised the agency that her great-aunt Alberta had new information about her American Indian ancestry. The agency contacted Alberta. She informed the agency that David's great-great-great-great-grandmother, Lula R., had Cherokee Tribe ancestry and a Dawes Roll number.

On February 2, 2012, the agency sent out a fourth ICWA notice with the information contained in the previous notice as well as the family tree that included Lula R. and the Cherokee Dawes Roll number. The notice also included handwritten notes containing further information about Lula's immediate relatives, e-mail among family members discussing efforts to uncover information about Lula, and a printout from accessgeneology.com showing that the Dawes Roll number Alberta gave to the agency was traced to a Lula of Cherokee descent. This notice was sent to the Secretary of the Interior, the BIA, and all three federally recognized Cherokee Tribes.

The BIA and three Cherokee Tribes responded that David was not an Indian child and was not eligible for membership or enrollment in their respective tribes.

At the hearing on February 10, 2012, the juvenile court sustained the allegations in the agency's petition and found David to be a person described by section 300, subdivisions (b) and (j). The court continued the contested dispositional hearing.

The parties at the continued dispositional hearing on March 16, 2012, stipulated that the testimony on the ICWA with regards to David's brother would be entered into evidence for David. At the continued contested hearing on April 13 and April 17, 2012, the juvenile court heard, among other things, the evidence regarding the tribes' responses to the ICWA notices. On April 17, 2012, the court found that the ICWA did not apply to David.

The continued contested dispositional hearing continued on April 24, 2012. The juvenile court declared David to be a dependent of the court, formally removed him from parental custody, bypassed reunification services, and scheduled a section 366.26 hearing.

In April 2012, David and his brother were placed in a prospective adoptive home. The family was committed to adopting both David and his brother and David was doing

well in their care. Mother continued to visit David but David did not develop a parental relationship with her. Father had visited David only once in the past seven months.

At the section 366.26 hearing on August 16, 2012, the juvenile court found that David was adoptable and terminated parental rights.

Mother filed a timely notice of appeal from the order terminating parental rights.

## DISCUSSION

### I. *The ICWA*

Mother argues that the juvenile court erred when it terminated her parental rights without complying with the ICWA. She acknowledges that the agency sent out numerous ICWA notices but maintains that many of the notices sent were inadequate and no notice was sent to one of the federally recognized Chippewa Tribes.

In 1978, Congress enacted the ICWA to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) The ICWA recognizes that " 'the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents.' " (*Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 52.) "The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource. [Citation.] Congress has concluded the state courts have not protected these interests and drafted a statutory scheme intended to afford needed protection." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469.)

The ICWA confers on tribes the right to intervene at any point in state court dependency proceedings. (25 U.S.C. § 1911(c); *In re Desiree F., supra,* 83 Cal.App.4th at p. 473.) "Of course, the tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is pending." (*In re Junious M.* (1983) 144 Cal.App.3d 786, 790-791.) "Notice ensures the tribe will be afforded the opportunity to assert its rights under the [ICWA] irrespective of the position of the parents, Indian custodian or state agencies." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.)

To implement the notice requirement, the ICWA provides that "where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) If the tribe is unknown, the notice must be given to the BIA, as agent for the Secretary of the Interior. (25 U.S.C. § 1912(a); 25 C.F.R. § 23.2; *In re Edward H.* (2002) 100 Cal.App.4th 1, 4, superseded by statute on another issue.)

The ICWA notice to a tribe "shall include the following information, if known: [¶] (1) Name of the Indian child, the child's birthdate and birthplace. [¶] (2) Name of Indian tribe(s) in which the child is enrolled or may be eligible for enrollment. [¶] (3) All names known, and current and former addresses of the Indian child's biological mother, biological father, maternal and paternal grandparents and great grandparents or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers, and/or other identifying information. [¶] (4) A copy of the petition, complaint or other document by which the proceeding was initiated." (25 C.F.R. 23.11(a) and (d); see also Welf. & Inst. Code, § 224.2, subd. (a)(5)(C).)

The abovementioned information must be provided by the agency to the tribes to the extent that the information is known and available. (*In re C.D.* (2003) 110 Cal.App.4th 214, 227.) The agency has an affirmative and continuing duty to inquire about, and attempt to obtain, all possible information about the child's family history. (*In re S.M.* (2004) 118 Cal.App.4th 1108, 1116.)

## II. *Jurisdiction and Forfeiture*

The juvenile court made its finding at the dispositional hearing on April 17, 2012, that the ICWA did not apply. At the hearing, mother did not challenge the adequacy of the ICWA notice, and she did not appeal from the dispositional order. The agency maintains that this court does not have jurisdiction over this appeal because mother is essentially challenging the dispositional order and her notice of appeal that was filed on

6

August 20, 2012, is untimely. (See *Slone v. Inyo County Juvenile Court* (1991) 230 Cal.App.3d 263, 267 [held that Congress did not intend that the ICWA should "preempt the subject matter jurisdiction of any state court or confer new subject matter jurisdiction upon any state court"].) Even if this court has jurisdiction, mother, according to the agency, has forfeited raising this issue because she did not ever claim in the lower court that the ICWA notice was inadequate.

California Rules of Court, rule 8.406(a) requires filing the notice of appeal within 60 days, and the rule is jurisdictional. (*In re Cynthia C.* (1997) 58 Cal.App.4th 1479, 1488.) Here, mother filed her notice of appeal on August 20, 2012, within 60 days of the court's order on August 16, 2012, terminating parental rights. We thus have subject matter jurisdiction over this appeal.[3]

The agency maintains that mother cannot challenge the ICWA ruling because a parent may not challenge prior orders in dependency matters when the statutory time for filing the appeal has passed. (See e.g., *Wanda B. v. Superior Court* (1996) 41 Cal.App.4th 1391, 1396 [the mother's appeal from the order terminating the father's reunification services could not challenge an earlier order denying the mother reunification services].) Furthermore, the agency points out that mother's notice of appeal referred to the order terminating parental rights and did not mention the ICWA findings and therefore the present challenge to the ICWA is not within the scope of mother's appeal.

---

[3] The agency argues that the contention in the present appeal is almost identical to mother's argument in her opposition to the agency's motion to dismiss mother's appeal in *In re K.H.* We rejected mother's argument and dismissed mother's appeal from the order terminating her parental rights with regard to K.H., David's sibling. (*In re K.H.,* A135809, filed Oct. 23, 2012.) In *In re K.H.,* mother's parental rights were terminated on April 13, 2012. She filed a notice of appeal on June 20, 2012, which was eight days after the expiration of the 60-day filing deadline under California Rules of Court, rule 8.406(a). We did not have jurisdiction over the appeal in *In re K.H.* (See *Slone v. Inyo County Juvenile Court, supra,* 230 Cal.App.3d at p. 267.) The present appeal is therefore significantly different because we do have jurisdiction over mother's appeal from the order terminating her parental rights as to David.

It is true that the dispositional order in a dependency proceeding is directly appealable and the general rule is that a parent may not attack the validity of a prior appealable order for which the statutory time for filing an appeal has passed. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150; *In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.) Such a rule is necessary to promote finality and expedition of decisions concerning children and their interests in securing stable homes. (*In re Meranda P.,* at pp. 1150-1152.)

The Fifth District has applied the foregoing rule to a challenge to the ICWA notice. In *In re Pedro N.* (1995) 35 Cal.App.4th 183, the social services department had sent notice to the BIA but, even after learning the name of a federally recognized tribe at the dispositional hearing, failed to notify that tribe. (*In re Pedro N.*, at p. 187.) The Fifth District held that because "the mother could have challenged the court's decision to proceed [allegedly without proper ICWA notice] at the dispositional hearing and did not do so," she was "foreclosed from raising the issue now on appeal from the order terminating her parental rights." (*Id.* at p. 189.)

Subsequently, courts have disagreed with *In re Pedro N., supra,* 35 Cal.App.4th 183, and have held that improper ICWA notice is a continuing error that may be raised on appeal at any time. (See, e.g., *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 261 (*Dwayne P.*); *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435; *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1195; *In re Z.N.* (2009) 181 Cal.App.4th 282, 297.) These courts have concluded that parents cannot properly be deemed to have waived the tribe's rights under the ICWA. (*In re Desiree F., supra,* 83 Cal.App.4th at p. 471 ["There is nothing either in the ICWA or the case law interpreting it which enables anyone to waive the tribe's right to notice and the right to intervene in child custody matters"]; *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1408 [" 'Because the notice requirement is intended, in part, to protect the interests of Indian tribes, it cannot be waived by the parents' failure to raise it' "]; *In re Nikki R.* (2003) 106 Cal.App.4th 844, 849 ["Case law is clear that the issue of ICWA notice is not waived by the parent's failure to first raise it in the trial court"].) *In re Marinna J.* (2001) 90 Cal.App.4th 731, clarified: "[I]t would

8

be contrary to the terms of the [ICWA] to conclude . . . that parental inaction could excuse the failure of the juvenile court to ensure that notice . . . was provided to the Indian tribe named in the proceeding." (*Id.,* at p. 739.)

The court in *Dwayne P., supra,* 103 Cal.App.4th 247 explained: "When the court has reason to know Indian children are involved in dependency proceedings, as here, it has the duty to give the requisite notice itself or ensure the social services agency's compliance with the notice requirement. [Citations.] In our view, the court's duty is sua sponte, since notice is intended to protect the interests of Indian children and tribes despite the parents' inaction. [Citation.]" (*Id.* at p. 261.)

We agree with *Dwayne P.* and the numerous other courts that hold that a parent's delay in challenging the compliance with the ICWA notice requirements does not result in forfeiture of the issue. Here, as already stressed, the notice of appeal from the order terminating parental rights was timely and mother may challenge the agency's compliance with the ICWA notice requirements. Thus, mother's notice of appeal, contrary to the agency's argument, was sufficient even though it simply referred to the order terminating parental rights and did not mention that it was challenging compliance with the ICWA. (See Cal. Rules of Court, rule 8.100(a)(2).)

The agency contends that mother is simply arguing that the investigation was inadequate and is not claiming that the agency failed to notify potentially affected tribes. The agency maintains that the holding that a parent cannot forfeit a challenge to the ICWA notice does not apply to the present case. We disagree with this characterization of mother's challenge. In this appeal, mother asserts that the agency failed to provide any notice to the Lac du Flambeau Tribe and that the notice provided to other tribes was sufficiently deficient as to deprive the tribes of any meaningful notice.

Accordingly, we conclude that we may consider mother's challenge to the ICWA notice even though she did not appeal the dispositional order and she did not object on this basis in the juvenile court. We have jurisdiction, however, to reverse only the order terminating mother's parental rights, and not any earlier orders. (See *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 342.)

9

### III. *Harmless Error*

Mother contends that the juvenile court erred in finding that the agency complied with the notice requirements of the ICWA and asserts that this alleged error must result in automatic reversal. Specifically, mother contends that the agency failed to send any notice to the Lac du Flambeau Tribe and the St. Croix Tribe of Wisconsin.[4] She also contends that the first notice provided to the Blackfeet Tribe did not provide all of the family-identifying information available to the agency and that the second and/or third notice sent to the 14 Chippewa Tribes was inadequate. She maintains that the agency should have sent the fourth notice to all of the tribes.

"Deficiencies in an ICWA notice are generally prejudicial but may be deemed harmless under some circumstances." (*In re E.W.* (2009) 170 Cal.App.4th 396, 402; *In re S.B.* (2005) 130 Cal.App.4th 1148, 1162.) "[W]here notice has been received by the tribe, . . . errors or omissions in the notice are reviewed under the harmless error standard." (*In re E.W.,* at pp. 402-403.) ICWA notice deficiencies may be considered harmless where the tribe declares that the child is not a tribal member. (*In re E.W.,* at p. 403.)

Mother argues that the agency should have sent the fourth notice with the Dawes Roll number of Lula to the 14 Chippewa Tribes and to the Blackfeet Tribe. This argument lacks merit. The additional information provided in the fourth notice was that David might be related to someone of Cherokee descent. This information did not provide any additional information linking David to the Chippewa Tribes or to the Blackfeet Tribe. These tribes received adequate notice and were given all the relevant information available to the agency. After receiving all of the relevant information the agency had, these tribes responded that David was not a member of their tribe and was not eligible to be a member. Accordingly, mother cannot demonstrate that the omission

---

[4] Mother does not actually mention the lack of notice to the St. Croix Tribe of Wisconsin; her argument of no notice refers solely to the Lac du Flambeau Tribe. The agency, however, acknowledges that it did not send a notice on behalf of David to this tribe.

of information about a possible linkage to the Cherokee Tribe in a notice to non-Cherokee Tribes was prejudicial.

Mother claims no notice was provided to the Lac du Flambeau Tribe and the St. Croix Tribe of Wisconsin and the notice provided to the Blackfeet Tribe was incomplete and inaccurate to a point of rendering it meaningless. The Blackfeet Tribe, unlike the 14 Chippewa Tribes, received only the first notice and did not receive the additional and correct information contained in the second and third notice. "Notice is meaningless if no information or insufficient information is presented to the tribe." (*In re S.M., supra,* 118 Cal.App.4th at p. 1116.) The first notice contained the correct information regarding David, mother, and father, but incorrectly listed mother's father as her grandfather. The notice also erroneously listed a person with mother's last name as father's paternal grandfather. The notice did not provide information about the parents of mother and father.

The agency concedes that the corrected notice should have been sent to the Blackfeet Tribe and that notice should have been sent to the Lac du Flambeau Tribe and the St. Croix Tribe of Wisconsin. The agency asserts that any deficiency was harmless because adequate notice was sent to these tribes on behalf of David's brother, K.H.; David and K.H. have the same biological parents. At the hearing in the juvenile court, the parties stipulated that the information regarding tribal affiliation was the same for both David and K.H. and that the evidence regarding K.H. was admissible regarding David. In October 2011, the Lac du Flambeau Tribe, the St. Croix Tribe of Wisconsin, and the Blackfeet Tribe stated that K.H. was not an enrolled member of their respective tribe and that he did not meet the requirements for membership. Mother does not mount any challenge in this appeal to the adequacy of the notice provided to the Lac du Flambeau Tribe, the St. Croix Tribe of Wisconsin, or the Blackfeet Tribe on behalf of K.H. Furthermore, the BIA received the third and fourth notices; the BIA did not find David to be an Indian child.

In the present case, the agency sent notices on behalf of David or K.H. to the BIA and to all of the tribes that the family indicated might have potential relations to David.

11

The BIA and numerous tribes responded by indicating that David and his brother were not a member or eligible for membership in that tribe. Thus, this record indicates any deficiency in the notice was harmless and any further notice provided would not result in a finding that David has any tribal affiliation.

## DISPOSITION

The judgment is affirmed.

_____
Kline, P.J.

We concur:

_____
Haerle, J.

_____
Richman, J.