Filed 4/13/16  D.W. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| D.W., | |
| Petitioner, | E065313 |
| v. | (Super.Ct.No. J255155) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | O P I N I O N |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Annemarie G. Pace, Judge.  Petition denied.

Law Offices of Vincent W. Davis & Associates and Stephanie M. Davis for Petitioner.

No appearance for Respondent.

1

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Real Party in Interest.

On February 2, 2016, the juvenile court terminated petitioner D.W.'s (Father) reunification services and set the Welfare and Institutions Code section 366.26[1] hearing. Father filed a petition for extraordinary writ in which he contends the juvenile court erred in finding proper notice under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and that real party in interest, San Bernardino County Children and Family Services (CFS), failed to provide reasonable reunification services. The petition is denied.

## I. FACTS AND PROCEDURAL HISTORY

On May 2, 2014, the social worker received a referral alleging general neglect of A.W. (Minor) born in August 2013. The reporting party indicated that J.A. (Mother)[2] had bruises and a laceration due to physical abuse inflicted by Father, which the reporting party was concerned occurred while Mother was holding Minor. The reporting party was additionally concerned for Mother's mental state due to the extreme physical abuse she had sustained from multiple domestic violence incidents. The reporting party informed the social worker Father was a methamphetamine addict and had a severe alcohol problem.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother is not a party to this petition.

Mother was located on May 27, 2014, in a hotel with her husband.[3] Mother admitted Father pushed and yelled at her when he had been drinking. Mother reported Father had been arrested and incarcerated on May 24, 2014, for domestic violence for pulling her hair. Mother further acknowledged that Father's commission of domestic violence in the presence of Minor was a concern. Mother indicated she would obtain a restraining order against Father while he was still incarcerated.

Mother's husband later reported Mother drove to pick up Father when he was released from jail. The husband reported Father "'beats the shit'" out of Mother in the presence of Minor. He indicated Mother and Father lived with Minor in a hotel. The maternal grandmother reported Mother had been "'severely beaten'" by Father and had sustained bruises and a "'gash on her forehead.'"

On June 4, 2014, the social worker accompanied a sheriff's deputy serving a warrant on the parents. Father became angry when told Minor was being taken into protective custody; Father lunged at the social worker. Father was handcuffed and placed in a patrol car.

Mother had a criminal history, which included willful cruelty to a child, infliction of injury on a child, three batteries, domestic violence, and fighting. Father had a criminal history, which included two incidents of domestic violence, four incidents of driving under the influence, sex with a victim under the age of 18, and three incidents of

---

[3] Father is not Mother's husband.

failure to register as a sex offender. CFS had 18 prior investigations of Mother with respect to Minor's sibling.

On June 6, 2014, CFS personnel filed a juvenile dependency petition alleging, with respect to Father, that he had a history of substance abuse problems (b-3) and domestic violence in the presence of Minor (b-4). CFS personnel subsequently amended the petition to allege an additional allegation that Father led an unstable and unsafe lifestyle with a substantial criminal history (b-6).[4] At the detention hearing on June 9, 2014, the court detained Minor and ordered Father to drug test that day.

Father variously reported being a registered member of the Dakota and Lakota Sioux tribes of South Dakota and Cheyenne and that he had been born on the Pine Ridge Reservation. CFS submitted a notice of child custody proceeding for an Indian child notifying the Dakota and Lakota branches of the Sioux tribes, the Blackfeet, and the Cheyenne tribes of the proceedings.[5]

In the jurisdiction and disposition report filed June 25, 2014, the social worker reported Father had tested positive for marijuana on June 9, 2014. Father reported he had a prescription for medical marijuana which he provided to CFS. The prescription was valid from May 24, 2014, through May 24, 2015. Father had negative drug tests on June 27 and July 1, 2014. On June 30, 2014, the court set the matter for mediation.

---

[4] The b-3 and b-4 allegations were respectively renumbered b-4 and b-5.

[5] Father's brother had reported Father had heritage from the Blackfeet tribe.

4

On July 8, 2014, CFS filed an ICWA declaration of due diligence with certified return receipts for all notified tribes and letters reflecting Father's and Minor's nonmembership and ineligibility for membership in a number of tribes. On June 10, 2014, the mediator filed the mediation report, which reflected Father had submitted on all allegations. Father agreed to outpatient substance abuse treatment, individual counseling, anger management, and parenting classes. Father contested the dispositional recommendation of removal of Minor; Father requested return of Minor under family maintenance services.

In an August 7, 2014, information to the court, the social worker reported Father had failed to drug test on June 9 and 17, 2014. Father had been in drug treatment for two weeks, had one session of anger management, and had yet to participate in parenting classes. Father tested positive for marijuana on July 16, 2014.

On August 12, 2014, CFS submitted an additional ICWA declaration of due diligence reflecting that a number of other tribes, including the Northern Cheyenne, had responded indicating Father's and Minor's ineligibility for tribal membership. A report from Father's anger management program dated August 12, 2014, reflected Father was making great progress and participating fully in the group anger management program.

On August 14, 2014, the juvenile court struck the b-6 allegation, found the b-4 and b-5 allegations true, removed Minor from Father's care, and ordered reunification services. On September 11, 2014, CFS filed a final ICWA declaration of due diligence,

noting that all tribes had either responded that Minor was ineligible for membership or had failed to respond within the statutory time frame.

In the February 3, 2015, status review report, the social worker recommended reunification services be terminated. Officers had arrested Father on September 24, 2014, for false identification to a police officer and again on December 2, 2014, for trespassing. Father admitted to relapsing and alcohol use. He failed to show for drug testing on January 30, 2015; tested negative on August 4 and 13, October 1, 2, and 6, and December 18, 2014; and tested positive for marijuana on August 28, September 4, and November 6, 2014.

Father was scheduled to be discharged from his substance abuse treatment program on February 19, 2015. He completed five weeks of an eight-week parenting program. Father successfully completed a 12-week anger management program and had attended Narcotics Anonymous/Alcoholic Anonymous (NA/AA) meetings.

In a subsequent mediation report, Father agreed to random drug testing, attendance at NA/AA meetings thrice weekly, and additional individual counseling. On March 24, 2015, the juvenile court adopted the mediation report, found reasonable services had been provided, and continued reunification services. The court noted that Father's no-shows for drugs tests would be considered as positive results.

In the July 14, 2014, status review report, the social worker recommended continuation of reunification services. Father had tested positive for marijuana on May 5 and 15, and June 8, 10, and 15, 2015. He was a no-show for tests scheduled on April 1

6

and 8, and May 11, 2015. Father missed half of his scheduled groups in his substance abuse treatment program. There had been an incident of domestic violence between Mother and Father in April 2015.

At a hearing on July 21, 2015, counsel for CFS noted that Father's positive tests for marijuana remained an issue, but that if he had a current license, he could provide that to the social worker. The court ordered an updated case plan which required Father to participate in domestic violence classes. Father was ordered to drug test that day with a failure to appear deemed a positive result. The social worker filed an updated case plan on August 5, 2015, reflecting the requirement that Father participate in domestic violence counseling.

On September 29, 2015, the social worker informed the court that Father's substance abuse counselor reported that another client admitted providing a clean sample of urine to Father for his use in drug testing. Father missed a drug test two weeks earlier and failed to show for counseling on September 28, 2015.

In the November 24, 2015, status review report, the social worker reported allegations that Father had threatened to kidnap Minor. Law enforcement arrested Father on November 8, 2015, for criminal threats. After attending five of eight mandatory sessions, Father was terminated from individual counseling for threatening the counselor. Father had apparently continued to attend anger management counseling rather than domestic violence counseling despite the change in his case plan. When Father found out

7

that CFS would not pay for and that he would not receive credit for the anger management classes he had already attended, he became upset.

Father tested negative for drugs on July 8, August 5, 12, 24, 26, and 28, and September 2, 21, and 23, 2015. He tested positive for marijuana on July 22, 27, and 29, September 30, and October 8 and 14, 2015. Father failed to show for testing on September 22, 2015.

In two separate reports covering July and August 2015, Father's substance abuse progress report reflected he had, respectively, missed six and seven days of treatment. Only two missed sessions in each month had been excused. Father was terminated from substance abuse counseling for testing positive for THC, maintaining a lack of respect for staff, and manipulating a drug test. The social worker referred Father to substance abuse services elsewhere on October 8, 2015; however, Father informed the social worker he would be unable to attend the services due to work. Father failed to show for visitation with Minor twice during the reporting period.

At a hearing on December 3, 2015, Father's counsel reported that Father had informed him "the Northern Cheyenne Tribe would like to intervene on the parents['] behalf. [¶] We're asking the department . . . to follow up with the Cheyenne Tribe, the ICWA representative." Father's counsel provided the telephone number of the tribe. The court noted that it had already received a declaration of due diligence reflecting that a particular tribe had been notified and had received a letter from that tribe indicating it

would not intervene.  The court noted:  "[I]f [Father] has documentation[] to support th[en] he should provide that to the department."

In a December 14, 2015, information to the court, the social worker reported Mother had called the police on November 7, 2015, to report Father had stolen her CFS-provided gas cards and threatened to kill her.  On December 17, 2015, the social worker reported she had met with Father and he still did not have any additional information that would require additional notification pursuant to ICWA.

In a February 1, 2016, information to the court, the social worker reported that Father had failed to show for visitation with Minor on December 10 and 23, 2015, and January 6 and 7, 2016.  Father became verbally aggressive toward the social worker on January 20, 2016, alleging she failed to send him gas cards.  Father was a no-show for drug tests on December 18 and 21, 2015, and January 11 and 20, 2016.

At the 18-month hearing on February 2, 2016, Father testified he had completed both the domestic violence and substance abuse treatment programs required by his case plan.  He never provided proof of completion to the social worker because he believed it was her duty to obtain that information.  Father alleged the service provider had mistakenly placed him in anger management rather than domestic violence classes.  Father noted he had been attending NA/AA meetings five to seven times weekly, but had not provided attendance sheets to the social worker.

Father testified he had obtained a prescription for marijuana in 2010.  He acknowledged manipulating a drug test.  Father admitted he was terminated from

9

treatment for manipulation of the test and a positive drug test. He admitted failing to drug test on December 18 and 21, 2015, and January 11 and 20, 2016. It was stipulated that Father's sister and employer would testify they had not observed Father under the influence. Father denied ever threatening anyone or threatening to kidnap Minor.

Father noted: "My tribe is looking into it. I've got the [N]ative American ancestry. I was enrolled at one point and they tried to trace down that enrollment and step in." Father's counsel stated he had spoken with an individual with the Northern Cheyenne Tribe who believed Father may have been enrolled in the tribe, but due to a fire 15 to 30 years earlier, those records had been destroyed. The court observed that Father's counsel "had raised issues of ICWA . . . . I suggest that if you have that information, that you provide it to county counsel and the worker."

The juvenile court terminated Father's reunification services and set the section 366.26 hearing. Counsel for CFS observed: "I did also review the ICWA notices and the tribe that Father is claiming to have possibly been a member at some point, denies that the child would qualify for status in the tribe. [¶] So if there's anything new we're happy to look into it. But just to be clear, it was raised, we looked into it, and there's nothing new." The court reiterated to Father's counsel that if there was new information regarding Father's Indian status to provide that information to CFS.

10

## II. DISCUSSION

A. *ICWA*

Father contends the juvenile court erred in finding ICWA notice proper because the court and CFS personnel failed its continuing duty to inquire into Minor's Indian heritage after Father alleged the Northern Cheyenne Tribe had indicated Father may have been an enrolled member. We disagree.

Notice of the proceedings is required to be sent whenever it is known or there is reason to know that an Indian child is involved. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.2, subd. (a); see *In re Desiree F.* (2000) 83 Cal.App.4th 460, 469.) Notice serves a twofold purpose: "(1) it enables the tribe to investigate and determine whether the minor is an Indian child; and (2) it advises the tribe of the pending proceedings and its right to intervene or assume tribal jurisdiction." (*In re Desiree F.*, *supra*, at p. 470.)

Juvenile courts and child protective agencies have "'an affirmative and continuing duty to inquire whether a [dependent] child . . . is or may be an Indian child.'" (*In re H.B.* (2008) 161 Cal.App.4th 115, 121; § 224.3; Cal. Rules of Court, rule 5.481.) As soon as practicable, the social worker is required to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or eligibility. (§ 224.3, subd. (c); *In re Shane G.* (2008) 166 Cal.App.4th 1532, 1539; Cal. Rules of Court, rule 5.481(a)(4).) "'The [trial] court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.]

11

We review the trial court's findings for substantial evidence. [Citation.]' [Citation.]" (*In re Christian P.* (2012) 208 Cal.App.4th 437, 451.)

Here, on July 8, 2014, CFS personnel filed an ICWA declaration of due diligence reflecting that notice of the proceedings had been mailed to all tribes, including Northern Cheyenne, relevant to the tribal affiliations alleged by Father regarding the instant juvenile proceedings. That notice indicated responses from a number of tribes reflecting that Father and Minor were not eligible members and that the tribes would not intervene.

On August 12, 2014, CFS personnel filed another declaration of due diligence which reflected further indications from additional tribes regarding Father's and Minor's ineligibility for membership and tribal intentions not to intervene. Most pertinent to the issue raised by Father on appeal, the Northern Cheyenne Tribe submitted a letter reflecting that Minor was not an enrolled member of the tribe and did not fall under ICWA: "No further correspondence or legal documents need to be sent to our agency. [¶] If any parent claims that they are a descendent of the Northern Cheyenne Tribe, they must submit the necessary documents to the Northern Cheyenne Tribal Enrollment office."

On September 11, 2014, CFS personnel filed a final declaration of due diligence noting that no tribe had filed a response indicating an intention to intervene within the statutory time period. CFS personnel recommended that the court find ICWA did not apply. The juvenile court signed an order finding that ICWA did not apply in the instant case.

12

The court's order was supported by substantial evidence.  Father's contention that his self-serving statement that an individual with the Northern Cheyenne Tribe had indicated he may have been an enrolled member was not new information for purposes of ICWA, which would have required additional notification.  (§§ 224.2, subd. (a)(5), 224.3, subd. (f).)  Indeed, the juvenile court expressly found the reports in the case more credible than Father's testimony.  Moreover, the Northern Cheyenne Tribe had already received notification containing all pertinent information.  If that tribe wished to intervene it had only to submit a letter to CFS indicating its intention to do so.  This it did not do.

Furthermore, Father's counsel first informed the court of Father's report of the Northern Cheyenne Tribe's purported intention to intervene on December 3, 2015.  The court told counsel to provide CFS with documentation of any such intent.  Two months later, at the 18-month review hearing, Father had still failed to provide CFS with any such documentation.  The court's determination that proper notice had been provided pursuant to ICWA was supported by substantial evidence.

B.  *Reasonable Services*

Father contends the juvenile court's order finding CFS had provided Father reasonable reunification services was not supported by substantial evidence because Father's case plan failed to take into account Father's legal prescription for medical marijuana and the social worker neglected to have regular communication with Father during the last six months of the proceedings.  We disagree.

13

The department "'must make a good faith effort to develop and implement a family reunification plan. [Citation.] "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." [Citation.]' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.] 'The applicable standard of review is sufficiency of the evidence. [Citation.]' [Citation.]" (*In re T.G.* (2010) 188 Cal.App.4th 687, 697.) We likewise review a court's order terminating a parent's reunification services for sufficiency of the evidence. (*In re Heather B.* (1992) 9 Cal.App.4th 535, 563.)

Here, at the 18-month hearing, counsel for Minor stated: "Father claims that he gave the marijuana card and that the department is aware. The records do not reflect that." Counsel for CFS stated: "The worker has never received the marijuana card. As far as I can tell, from my notes at the beginning of the case, this is not something raised by father who is saying he's had the card since 2010, I believe. [¶] When this case was initially brought before the Court there was not an exception brought to this Court for father's marijuana use in the case plan."

Counsels' statements are belied by the record, which reflects Father did have a prescription for medical marijuana valid from May 24, 2014, through May 24, 2015.

14

Nevertheless, nothing in the record reflects the juvenile court terminated Father's reunification services for his positive tests for marijuana during the validity of his prescription. In fact, the court noted it was terminating Father's reunification services because Father had manipulated tests, missed tests, was terminated from programs, and failed to visit regularly with Minor.

Father had been referred to individual counseling, anger management, substance abuse counseling, substance abuse testing, parenting classes, a 12-step program, domestic violence counseling, and had been ordered visitation with Minor. On October 8, 2015, during the period Father alleges the social worker neglected to contact him, the social worker referred Father to an additional substance abuse program after he had been terminated from another. The social worker noted that during that period she had "attempted to contact father however father has not contacted the undersigned." Thus, to the extent the social worker did not contact Father, it was Father who failed to make himself available for such contact. The court's order finding CFS had provided reasonable services was supported by substantial evidence.

Moreover, the court's order terminating Father's reunification services was supported by substantial evidence. Father missed 11 drug tests during the pendency of the proceedings, all of which were deemed to be positive for *any* drug, not just marijuana. The original report supporting the b-4 allegation that Father had a history of substance abuse problems was that Father had a *methamphetamine* and *alcohol* problem. Father admitted to relapsing and using alcohol. He had six positive tests for marijuana which

15

occurred after the expiration of the marijuana prescription which he provided to CFS. Father attempted to cheat on one drug test.

Father was terminated from programs. After termination from substance abuse counseling, the social worker provided a referral to an additional program, which Father stated he would be unable to attend. He failed to complete either substance abuse or domestic violence counseling. Father missed a number of visits with Minor. He had numerous unexcused absences from the programs in which he had enrolled. Thus, sufficient evidence supported the court's order terminating Father's reunification services.

## III. DISPOSITION

The petition is DENIED.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>McKINSTER</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>HOLLENHORST</u>
J.

16